# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**MARJORIE NICHOLS,**

        **Plaintiff,**

-vs-                            **Case No.  3-:04-CV-146**

**UNUM LIFE INSURANCE**
**COMPANY OF AMERICA,**

                                        **Judge Thomas M. Rose**

        **Defendant.**

---

**ENTRY AND ORDER GRANTING UNUM'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD (Doc. #23); OVERRULING NICHOLS' MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD (Doc. #24); DISMISSING UNUM'S COUNTERCLAIM AND TERMINATING THE CASE**

---

This is a claim for long term disability ("LTD") benefits brought by Plaintiff Marjorie Nichols ("Nichols") against Defendant Unum Life Company of America ("Unum"). Nichols' claim is brought pursuant to the Employee Retirement Income Security Act ("ERISA"). Unum has counterclaimed seeking benefits that it paid to Nichols in the amount of $17,940.

Nichols claims LTD benefits pursuant to a Long-Term Disability Policy (the "Policy") established by her employer, Good Samaritan Hospital. The Policy was issued, insured and administered by Unum.

Nichols is seeking LTD benefits for two years which is the time during which Nichols has been disabled from her own occupation. After two years, the Policy requires that a claimant be disabled from any occupation to remain entitled to benefits and Nichols has not yet sought benefits for being disabled from any occupation.

Nichols initially filed a Complaint naming Unum and two other defendants. Unum answered and counterclaimed. Nichols then amended her complaint to exclude the other two defendants. Nichols' First Amended Complaint and Unum's Counterclaim remain.

Now before the Court is Nichols' Motion for Judgment On the Administrative Record (Doc. #24) and Unum's Motion for Judgment On the Administrative Record (Doc. #23.) The Administrative Record ("AR") has been filed. The Motions for Judgment On the Administrative Record are fully briefed and now ripe for decision. A background will first be set forth followed by the standard of review, an analysis of the Motions and an analysis of Unum's Counterclaim.

## BACKGROUND

The background consists of the applicable Policy language and the proceedings. Each will be described hereinafter.

### Policy Language

The Policy specifically provides that, "[w]hen making a benefit determination under the policy, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy." (AR at UCPL00662.) The Policy then defines disability as follows:

You are disabled when Unum determines that:

- you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and

- you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.

After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience.

(AR at UPCL00658.)

The Policy also contains definitions that are relevant to the issues in this case:

LIMITED means what you cannot or are unable to do.

MATERIAL AND SUBSTANTIAL DUTIES means duties that:
- are normally required for the performance of your regular occupation; and
- cannot be reasonably omitted or modified.

REGULAR OCCUPATION means the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

(AR at UPCL00641-43.)

The Policy provides for a setoff for Social Security disability ("SSDI") payments by authorizing Unum to "subtract from your gross disability payment…[t]he amount that you, your spouse and your children receive or are entitled to receive as disability payments because of your disability under…the United States Social Security Act." (AR at UPCL00654.) The Policy also authorizes Unum "to recover any overpayments due to: fraud; any error Unum makes in processing a claim; and your receipt of deductible sources of income." (AR at UPCL00666.) Further, Unum can select the method of repayment and Unum has the right to apply minimum payment to recoupment of outstanding overpayment. (AR at UCPL00666 and 00652.)

<u>Proceedings</u>

Nichols was employed by Good Samaritan Hospital as a registered nurse from August 25, 1999 until May 31, 2002. (AR at UPCL00695.) When she last worked, Nichols was a Case Manager. (Id.)

A Case Manager at Good Samaritan is responsible for "facilitating and expediting care delivered to patient during the entire episode of care…" (AR at UPCL00693.) In carrying out

this responsibility, the Case Manager is required "to have direct contact with the patient, the patient's family, the patient's physicians and the appropriate health care team members to ensure care coordination." (Id.) The working conditions for a Case Manager at Good Samaritan require that the individual…

    2. May walk and/or stand up to 50% of the time.

    3. May utilize a computer keyboard up to 5 hours per day.

    4. May utilize a telephone up to 3 hours per day.

    5. With assistance, lifts, moves and/or transfers patients which may weigh up to 300 pounds up to 5 times a week.

    6. Carries a 35-pound load, 1,200 feet 2 times a week.

    7. Bends and/or stoops up to 20 times per day.

    8. May push patients in wheelchairs (average push force 22 pounds) up to 1,000 feet from once a week up to 4 times per day or via a carrier or bed (average push force 25 pounds) up to 1,000 feet up to 10 times per day.

(AR at UPCL00691-92.)

    In November 2002, Nichols filed an LTD claim in which she asserted that she suffered from "extensive arthritis spurring spine, spinal lesions and foramen stenosis, multiple periteral blood clots, severe pain & severely reduced functional limits." (AR at UPCL00688.) Nichols' attending physician, Dr. Brian Fornadel, M.D., diagnosed her with "cervical disk & myelopathy (722.71) cervical stenosis (724.04); lumbar disk & myelopathy (722.75) spinal stenosis (724.05) venous embolisms (453.0)." (AR at UPCL00680.) At the time of Nichols' application, Dr. Fornadel identified the following restrictions: "No lifting No standing>30 min @ time No bending No sitting>30 min @ a time." (Id.)

On November 27, 2002, Unum completed its initial review of Nichols' claim. (AR at UPCL00310-11.) Unum indicated that it would require additional information and that it would contact Doctors Fornadel, Haluschak and Bernstein for additional medical information. (Id.)

On January 6, 2003, Unum notified Nichols that it would require an additional time of up to 30 days to make a decision. (AR at UPCL00297-98.) Unum indicated that it needed additional time because it was reviewing medical information that it had received late in December of 2002. (Id.)

Then, in a January 13, 2003 letter, Unum initiated payment of LTD benefits to Nichols beginning on November 28, 2002. (AR at UPCL00295.) In the letter notifying Nichols, Unum indicated that the benefit payments would continue until Unum had made a final determination of Nichols' eligibility for benefits and that the payments were being made under a reservation of rights including repayment of the benefits paid. (AR at UPCL00294.) Due to Good Samaritan's salary continuation program, Nichols had been paid through December 11, 2002. (AR at UPCL00694.)

In a letter to Nichols dated June 23, 2003, Unum indicated that it was unable to approve benefits "at this time."[1] (AR at UPCL00221-25.) The letter indicates that three medical reviews of the evidence were conducted by Unum's on-site physicians. (Id.) The letter also reviews the medical information submitted by Nichols' treating physicians. (Id.) Unum indicated that it was unable to continue benefits because the medical information in Nichols' file did not support an

---

[1] The AR includes another letter to Nichols with a date of June 25, 2003, that is similar, but not the same as the letter dated June 23, 2003. (UPCL0014-17.) The June 25th letter is sent to a different address for Nichols and appears to be copied to Nichols' former employer. The June 25th letter also begins by saying that Unum is "unable to continue benefits at this time" instead of being "unable to approve benefits at this time" as was indicated in the June 23rd letter.

impairment that would preclude her from performing the material and substantial duties of her own occupation. (Id.)

Nichols then timely appealed the denial of LTD benefits.[2] (AR at UPCL01037, 00200-03.) Unum delayed processing the appeal until Nichols' counsel could submit additional information. (Id.) Nichols' counsel then submitted additional medical records and a determination by the Social Security Administration that Nichols was completely disabled. (AR at UPCL01023-37.)

In response to Nichols' appeal, Unum determined that its original decision to deny Nichols' claim for LTD benefits was appropriate. (AR at UPCL00179-85.) This denial was communicated to Nichols in a letter dated February 27, 2004. (Id.) In determining that the denial of benefits was appropriate, Unum reviewed the medical information that had been in Nichols' file as well as the additional information that was provided by Nichols. (Id.) The medical review was performed by Stephen D. Jacobsen, an M.D.[3]

Because the medical evidence supported some restrictions and limitations, Nichols' file was referred for a vocational evaluation. (Id.) This review, according to Unum, indicated that Nichols could perform the material and substantial duties of her occupation within the restrictions and limitations that had been placed upon her. (Id.)

On May 5, 2004, Nichols then filed the lawsuit that is now before the Court. The analysis next turns to the standard of review.

---

[2]The AR refers to but does not include a copy of the appeal letter.

[3]Unum refers to a "twelve page, single spaced review of the record" done by Dr. Jacobsen. The AR actually contains two copies of a six-page review performed by Dr. Jacobsen. (AR at UPCL00186-97.)

## STANDARD OF REVIEW

When an ERISA plan administrator's decision to deny benefits is brought before a court, the court engages in a de novo review of the decision unless the benefit plan gives the plan administrator discretionary authority to determine eligibility or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where the plan administrator is given no discretionary authority by the plan, review by the court is *de novo* with respect to both the factual determinations as well as the legal conclusions of the plan administrator. *Id.* Where there is a clear grant of discretion, the court applies an arbitrary and capricious standard of review to the administrator's decision to deny benefits. *Wulf v. Quantum Chemical Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994), *cert. denied*, 513 U.S. 1058 (1994). Finally, absent a procedural challenge to the administrator's decision, the court's review is limited to the administrative record of the benefit determination. *Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609, 619 (6th Cir. 1998).

The Sixth Circuit does not require a plan to use any magic words such as "discretionary" to create discretionary authority for a plan administrator in administering the plan. *Johnson v. Eaton Corp.*, 970 F.2d 1569, n.2 (6th Cir. 1992). Yet the Sixth Circuit has consistently required "a clear grant of discretion [to the administrator]" before replacing its duty to engage in de novo review with the arbitrary and capricious standard. *Wulf*, 26 F.3d at 1373.

In this case, the Policy grants Unum discretionary authority to determine eligibility  for benefits and interpret the terms and provisions. (AR at UPCL00662.) Therefore, the Policy provides a clear grant of discretion to Unum to administer the Plan. As a result, decisions by Unum are reviewed using the arbitrary and capricious standard.

-7-

Nichols raises three additional issues regarding the standard of review. Each will be addressed in turn.

## "Differential Review Is Not No Review"

First, Nichols correctly points out that, while the arbitrary and capricious standard is deferential, "it is not, however, without some teeth." *McDonald v. Western-Southern Life Insurance Company*, 347 F.3d 161, 172 (6th Cir. 2003). "'Deferential review is not no review,' and 'deference need not be abject.'" *Id.* (quoting *Hess v. Hartford Life & Accident Insurance Company*, 274 F.3d 456, 461 (7th Cir. 2001)). The Court's obligation includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues. *Id.*

## Conflict of Interest

Nichols also argues for a less deferential standard of review than the normal arbitrary and capricious standard due to the existence of a conflict of interest. Nichols alleges that Unum has a conflict of interest because Unum is both paying for the LTD benefits and is adjudicating the benefit claims. Unum's role as described by Nichols is not disputed by Unum.

When the plan administrator is the insurer that ultimately pays the benefits, the plan administrator has a conflict of interest. *Gismondi v. United Technologies Corp.*, 408 F.3d 295, 299 (6th Cir. 2005)(citing *Killian v Healthsource Provident Administrators, Inc.*, 152 F.3d 514, 521 (6th Cir. 1998)). In this case, since Unum is both the Plan administrator and the insurer that ultimately pays the benefits, Unum has a conflict of interest.

If the plan administrator's decision is reviewed under the arbitrary and capricious standard, the conflict of interest must be weighed as a factor in determining whether there is an abuse of discretion. *Id.* (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

When weighing a conflict of interest, the court looks to see if there is evidence that the conflict in any way influenced the plan administrator's decision. *Carr v. Reliance Standard Life Insurance Co.*, 363 F.3d 604, n.2 (6th Cir. 2004); *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 2005 Fed.App. 0219P at n.2 (6th Cir. May 17, 2005). Therefore, the Court must look to see if Unum's decision was influenced by Unum's conflict of interest and weigh the review of Unum's decisions accordingly.

<u>The Regulatory Settlement Agreement</u>

Nichols also argues for a less deferential standard of review based upon a "Regulatory Settlement Agreement" (the "Agreement") that Unum has purportedly agreed to enter into. In her Response to Unum's Motion for Judgment On the Administrative Record, Nichols argues for a de novo review based upon the Agreement and the Eight Circuit's reasoning in *Woo v. Deluxe Corp.,* 144 F.3d 1157, 1160 (8th Cir. 1998). In her Reply In Support of her Motion for Judgment On the Administrative Record, she argues for a less deferential arbitrary and capricious standard of review based upon the Agreement and the same Eight Circuit decision. Nichols also asks the Court to allow additional discovery if the Court determines that she has provided insufficient proof of procedural irregularities for a less deferential standard of review.

The purported Agreement is between Unum, several state insurance regulators and the United States Department of Labor. The Agreement is the product of a multi-state market conduct examination of Unum's conduct by the insurance regulators. The Agreement provides for enhancement of Unum's claims handling procedures, a reassessment of certain previously denied or closed claims, additional corporate and board governance by Unum and a fine to be paid by Unum in the amount of $15 million.

The reassessment of previous claims includes a review for failure to use appropriate in-house medical resources, for failure to fairly interpret or apply information from the claimant's attending physician and for failure to conduct an appropriate occupational review. Claim files will also be examined for evidence of faulty or overly restrictive interpretation or application of policy provisions including the definition of "occupation" in "own occupation" policies and for actions suggesting a bias against the claimant.

Unum acknowledges the existence of the Agreement but argues that the review by this Court is limited to the AR and the Agreement is not in the AR. Unum further argues that the caselaw relied on by Unum is misplaced.

As determined hereinbefore, the arbitrary and capricious standard will be used and not the de novo standard. This determination is consistent with the Eight Circuit's determination in the case cited by Nichols where the Court used an arbitrary and capricious standard. *Woo*, 144 F.3d 1161.

The analysis then turns to whether Nichols is entitled to a less deferential review under the arbitrary and capricious standard based upon the Agreement. In the case cited by Nichols for support, the Eighth Circuit determined that, to obtain a less deferential review, the claimant must present evidence demonstrating that a conflict of interest or serious procedural irregularity exists which caused a serious breach of the plan administrator's fiduciary duty to the claimant. *Woo*, 144 F.3d at 1160.

Here, Nichols has already presented evidence of a conflict of interest which will be considered when Unum's decision is reviewed. The existence of a procedural irregularity is next addressed.

The analysis of procedural irregularity turns, as it must, to Sixth Circuit caselaw. The procedural irregularity referred to in Sixth Circuit caselaw is a failure to comply with procedural requirements set forth in the ERISA. *Wilkins*, 150 F.3d at 618; *Vanderklok v. Provident Life and Accident Insurance Co.*, 956 F.2d 610, 615-16 (6th Cir. 1992). In this case, there are no allegations that Unum failed to follow the procedural requirements set forth in the ERISA.

Turning back then to the Eighth Circuit, the procedural irregularity found in *Woo* was the plan administrator's failure to have a medical expert in a certain field review the claim. *Woo*, 144 F.3d at 1161. Nichols is, of course, free to make the argument regarding a medical expert in this case for consideration under the arbitrary and capricious standard.

Turning back to the Agreement, Nichols provides a list of practices listed therein that are identified as problems. She lists these alleged problems as a basis for less deferential review. Yet, all of these alleged problems are the types of issues that can be and are raised to show that a plan administrator's decision was arbitrary and capricious. To allow these alleged problems to be raised both to show that a decision was arbitrary and capricious and to require a less deferential review would be giving double weight to the alleged problems. While the law allows for the consideration of the alleged problems if they are applicable to and found in Nichols' case, it does not permit giving these practices double weight.

Nichols is entitled to a less deferential review based upon Unum's conflict of interest. She is also entitled to argue that Unum's decision to deny her benefits was arbitrary and capricious using some or all of the alleged problems identified in the Agreement to the extent that she can show, based upon the AR, that they apply to the consideration of her claim.

Failing to gain less deferential review due to the practices identified in the Agreement, Nichols seeks additional discovery. However, the scope of the district court's review of the denial of benefits is limited to the administrative record available to the plan administrator when the final decision was made. *Wilkins*, 150 F.3d at 618. Permitting courts to consider evidence that was not presented to the plan administrator would seriously impair the achievement of ERISA's goal of providing a method for beneficiaries to resolve disputes over benefits inexpensively and expeditiously. *Perry v. Simplicity Engineering*, 900 F.2d 963, 967 (6th Cir. 1990). The only exception is when consideration of evidence outside the administrative record is necessary to resolve a claimant's procedural challenge to the decision such as an alleged lack of due process or alleged bias on the part of the plan administrator. *Wilkins,* 150 F.3d at 618.

In this case, Nichols has not made a procedural challenge, as defined by the Sixth Circuit, to Unum's decision. To wit, Nichols has not alleged that Unum failed to follow specific ERISA requirements in making the decision. Therefore, Nichols is not entitled to additional discovery regarding the alleged problematic claims handling practices identified in the Agreement.

The Agreement provided by Nichols is unsigned and undated so the Court is unable to determine if it is in effect. However, if it is in effect, Nichols may elect to have the decision regarding her claim reviewed by the Claim Reassessment Unit that is established in the Agreement. However, the Agreement provides that Nichols' claim cannot be reviewed by the Claim Reassessment Unit if she has pending litigation against Unum challenging the denial or termination of her claim.

Nichols apparently has a choice. However, she cannot have both a review by this Court and a review under the Agreement by the Claim Reassessment Unit. Further, Nichols has already

shown bias in the form of a conflict of interest and the conflict of interest will be weighed when reviewing Unum's decision under the arbitrary and capricious standard and Nichols may raise the types of issues identified in the Agreement to the extent that they apply to her case.

<u>Conclusion</u>

Unum was vested with discretionary authority by the Policy. Therefore, decisions by Unum are reviewed using the arbitrary and capricious standard.

When applying the arbitrary and capricious standard, a court is to decide if the plan administrator's decision was rational in light of the plan's provisions. *Shelby County Health Care Corp. v. Southern Council of Industrial Workers Health and Welfare Trust Fund*, 203 F.3d 926, 933-34 (6th Cir. 2000) (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988), *cert. denied*, 488 U.S. 826 (1988)). A decision is not arbitrary and capricious if it is based upon a reasonable interpretation of the plan. *Johnson*, 970 F.2d at 1574.

In addition to a reasonable interpretation of the plan, the administrator's decision must be supported by evidence. *Killian*, 152 F.3d at 520. The decision is upheld if it is "the result of a deliberate principled reasoning process and if it is supported by substantial evidence." *Id.* at 520 (quoting *Baker v. United Mine Workers of America Health & Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)). Yet, the review of the decision includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues. Indications of arbitrary and capricious decisions include a lack of substantial evidence, a mistake of law, bad faith and a conflict of interest by the decision-maker. *Caldwell v. Life Insurance Company of North America*, 287 F.3d 1276, 1282 (10th Cir. 2002).

When applying arbitrary and capricious review, courts affirm administrative decisions "when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome …." *Davis By and Through Farmers Bank and Capital Trust of Frankfort, Kentucky v. Kentucky Finance Companies' Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989), *cert. denied*, 495 U.S. 905 (1990). However, courts should not defer to *post hoc* rationales for denying benefit claims generated for purposes of litigation by plan administrators when those rationales did not appear in the denial letters or in the administrative record. *University Hospitals of Cleveland v. Emerson Electric Company*, 202 F.3d 839 at n.7 (6th Cir. 2000). Having set forth the standard of review, the Motions are next analyzed.

## ANALYSIS OF THE MOTIONS FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Unum argues that its decision to terminate Nichols' LTD benefits was not arbitrary and capricious. Nichols disagrees and provides several reasons why it thinks the decision was arbitrary and capricious.

The reasoning used by Unum in deciding to terminate Nichols' LTD benefits is set forth in the letter that it sent to Nichols on February 27, 2004. (AR at UPCL00179-85.) In this letter, Unum indicates that it conducted a review of Nichols' claim based upon the medical information submitted by Nichols. Unum noted that it had reviewed medical reports from the physicians that had seen Nichols' including Dr. Jacobs, a neurologist; Dr. Mitchell, a pain management specialist; Dr. Haluschak, a hematologist and oncologist; Dr. Demirijan, a neurologist and pain management specialist; Dr. Bernstein, a neurosurgeon; Dr. Fornadel, a primary care physician; Dr. Waylonis, a pain management specialist; Dr. Watson, an anesthesiologist and pain management specialist; Dr. Goodsoon, a family practitioner; and Dr. Bowman, a psychologist.

Unum addressed each of the specific conditions that it found in the medical reports submitted by Nichols and provided an explanation of its analysis of the specific conditions. Unum concluded that the medical evidence supported some restrictions and/or limitations.

Unum then referred the restrictions and/or limitations to its vocational resource to compare them to the material and substantial duties of Nichols' regular occupation as performed in the national economy. Unum's vocational resource concluded that all of the material and substantial duties of Nichols' occupation can be performed within the restrictions and/or limitations ascribed to Nichols. Unum's vocational resource also reviewed the employability assessment report prepared for Nichols by Caroline Wolfe, CRC M.Ed., LPC, and was unclear as to why Ms. Wolfe would assert that Nichols could not return to her own sedentary occupation as a Nurse Case Manager.

Unum then concluded in the letter that, based upon its analysis, Nichols no longer met the definition of disability in the Policy. In sum, Unum determined that, although Nichols has certain restrictions and/or limitations, she is able to perform as a Nurse Case Manager in the national economy.

<u>Unum's Vocational Assessment</u>

Nichols first argues that Unum's reliance on Richard Byard's vocational assessment of Nichols was arbitrary and capricious for several reasons. Byard is the "vocational resource" who compared the material and substantial duties of Nichols' regular occupation as performed in the national economy to her restrictions and/or limitations. (AR at UPCL00156-57.)

The first reason given by Nichols is that Byard reviewed the job description provided by Nichols' employer and arbitrarily discarded the duties that were not consistent with Nichols'

restrictions and/or limitations. However, the Policy specifically requires Unum to look at the claimant's occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location. (AR at UPCL00641-43.) Byard does not specifically mention the national economy, but he does indicate that the physical exertion activities identified in Nichols' job description would be considered specific to her conditions of employment and not necessarily representative of the manner in which the claimant's overall occupation is performed. (AR at UPCL00156.) Therefore, rather than discarding duties not consistent with Nichols' restrictions and/or limitations, Byard compared the restrictions and limitations to the Nurse Case Manager job as it is done in the national economy as required by the Policy. This is not arbitrary and capricious.

The second reason given by Nichols is that Byard summarily concluded that Nichols can perform the material and substantial duties of the sedentary Nurse Case Manager occupation. She argues that Byard does not discuss how Nichols' limitations identified by Unum's on-site physician and involving her upper extremities and neck might impact her ability to perform as a Nurse Case Manager. However, Byard does indicate that he compared the restrictions and/or limitations cited by Dr. Jacobsen, Unum's physician, to the physical demands of Nichols' occupation. (AR at UPCL00156-57.) While he does not discuss how each restriction and/or limitation might impact Nichols' ability to perform in his report, Byard indicates that he considered each. This, again, is not an indication that Byard's opinion was arbitrary or capricious.

The third reason given by Nichols is that Byard does not address the availability of a sedentary Nurse Case Manager position in the local economy. However, the Policy requires

Unum to look at the claimant's occupation as it is normally performed in the national economy and Nichols has given no reason why Unum must address the availability of a sedentary Nurse Case Manager position in the local economy.

The Fourth reason given by Nichols is that Byard offered no basis to reject Wolfe's opinion that Nichols is unemployable. However, Byard does offer a basis to reject Wolfe's opinion. Byard indicates that "it appears that much of this [Wolfe's] conclusion is based on Ms. Wolfe's acceptance of the claimant's medical conditions as these have been described by the claimant." (AR at UPCL00156.) Further, Byard used the medical conditions as provided by Unum's doctor which Nichols' admits are substantially consistent with those indicated by Nichols' treating physicians.

Nichols adds a fifth reason in her Reply Memorandum In Support of Her Motion for Judgment On the Administrative Record. The fifth reason given by Nichols for why Unum's reliance on Richard Byard's vocational assessment of Nichols was arbitrary and capricious  is that Byard and another of Unum's vocational consultants did not address whether the positions that Nichols could return to would result in a 20% or more loss in her indexed monthly earnings.

However, Unum need not make this determination. The Policy provides that a claimant is disabled when she or he is limited from performing the material and substantial duties of her or his regular occupation due to his or her sickness or injury **and** she or he has a 20% or more loss in indexed monthly earnings due to the same sickness or injury. (AR at UPCL00658.) Therefore, if Unum determines that the first of the two requirements for being disabled is not satisfied, it need not consider the second requirement.

Unum's decision to rely upon Byard's vocational assessment and reject Wolfe's vocational assessment is not arbitrary or capricious. Byard's decision is based upon a reasonable interpretation of the Policy and is the result of a deliberate principled reasoning process supported by substantial evidence. Further, Nichols has identified no evidence and the Court has found no evidence that the inherent conflict of interest in any way influenced Byard's recommendation or Unum's decision based upon Byard's recommendation or that Unum otherwise acted in bad faith.

<u>Impact of Social Security Disability Determination</u>

Nichols next argues that Unum's decision is arbitrary and capricious because Unum ignored the impact of the Social Security disability retirement determination. The Social Security Administration determined that Nichols was completely disabled and Unum was aware of this determination when it made the final decision to terminate Nichols' LTD benefits.

In support of this argument, Nichols' cites a Seventh Circuit case wherein Judge Posner observed that a plan administrator that required a participant to apply for Social Security benefits was essentially estopped from denying coverage under the plan if the Social Security Administration ultimately determined that the participant was disabled. *Ladd v. ITT Corp.*, 148 F.3d 753, 755-56 (7th Cir. 1998). A three-judge panel in the Sixth Circuit later referred to Judge Posner's opinion and determined that a plan administrator's decision denying disability benefits where the Social Security Administration has determined that the applicant was totally disabled was arbitrary and capricious. *Darland v. Fortis Benefits Insurance Company*, 317 F.3d 516, 529 (6th Cir. 2003). *Darland* was also a case where the Policy required the claimant to apply for Social Security disability benefits. *Id.* at 530.

-18-

In this case, the Policy does not literally require the claimant to seek Social Security disability benefits. However, the Policy permits Unum to reduce the LTD benefits that it provides if it determines that the claimant is qualified for Social Security disability benefits and these benefits have not been awarded, have not been denied or have been denied and the denial is being appealed. (AR at UPCL00652-54.) Therefore, the Policy language has the practical effect of requiring the claimant to seek social security benefits. Otherwise, the claimant must accept a reduced LTD benefit from Unum. In addition, Unum clearly reaps the benefit of any Social Security benefits that are received. As a result, the Policy here is the same as the plan addressed in *Darland*.

The reasoning in *Darland* was based upon applying the "treating physician rule" to ERISA cases. *Darland*, 317 F.3d at 532. The treating physician rule holds that the decisionmaker should always give more weight to opinions from treating sources and imposes a heightened burden of explanation when treating sources' opinions are rejected. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003).

Since *Darland*, the United States Supreme Court determined that the treating physician rule does not apply to ERISA cases. *Nord*, 538 U.S. at 834. Following the Nord case, several three-judge panels in the Sixth Circuit have held that the ERISA plan administrator is not bound by the disability determination of the Social Security Administration. *Seiser v. Unum Provident Corp.*, 2005 WL 943697 at *3 (6th Cir. April 22, 2005)*; Lee v. MBNA Long Term Disability & Benefit Plan*, 2005 WL 705771 at *12 (6th Cir. March 29, 2005); *Whitaker v. Hartford Life and Accident Insurance Company*, 121 Fed.Appx. 86, 2005 WL 147076 at **2 (6th Cir. Jan. 24, 2005)(entitlement to Social Security benefits is measured by a uniform set of federal criteria but

a claim for benefits under an ERISA plan often turns on the interpretation of terms that differ

from SSA criteria); *Parson v. Union Underwear Company, Inc.,* 95 Fed.Appx. 144, 2004 WL

833055 at **2 (6th Cir. April 12, 2004)(disability under SSA rules does not necessarily mean

disability under a private pension plan); *Hurse v. Hartford Life and Accident Insurance

Company*, 77 Fed.Appx. 310, 2003 WL 22233532 at **6 (6th Cir. Sept. 26, 2003) ("it would be

incongruous to hold that, although the 'treating physician rule' is not applicable in ERISA cases,

the ERISA plan administrator is bound by the disability determination of the SSA…"). In *Hurse*

and *Whitaker*, there was no evidence that the plan administrator urged or aided the claimant in

pursuit of Social Security benefits. 2003 WL 22233532 at **6; 2005 WL 147076 at **2. In *Lee*

and *Seiser*, the Social Security determination was not part of the AR and whether the plan

required seeking Social Security benefits is not discussed. *Lee*, 2005 WL 705771 at *12; *Bishop*,

2005 WL 943697 at *3. In *Parson*, the private pension plan required a determination of

eligibility for disability benefits from the SSA or from a private plan. *Parson*, 2004 WL 833055

at **2.

The Sixth Circuit has essentially said that *Darland* is not good law regarding an ERISA

pension plan that requires the claimant to seek Social Security benefits but has not yet

specifically said that *Darland* is not good law when an LTD plan requires the claimant to seek

Social Security benefits. However, the Sixth Circuit has made the more general determination

that an ERISA LTD plan administrator is not bound by the disability determination of the Social

Security Administration and has set forth the reasoning used in such a determination.

The reasoning set forth by the Sixth Circuit is that (1) binding the plan administrator to a

SSA disability determination is inconsistent with the Supreme Court's refusal to apply the

treating physician rule and (2) that the entitlement to Social Security benefits is most likely measured by a different standard than entitlement to a claim for benefits under an ERISA plan. Applying this reasoning to the situation at hand whereby the Policy in essence requires the claimant to seek Social Security benefits results in the same conclusion as the Sixth Circuit has reached in other situations. The treating physician rule clearly does not apply here so binding the plan administrator to the SSA disability determination is inconsistent. More importantly, there is no evidence here that the standard used to determine Social Security benefits is the same as the standard set forth in the Policy. Therefore, Unum is not required to abide by the Social Security determination in this case.

<u>Selective Review</u>

In her response to Unum's Motion for Judgment On the Administrative Record, Nichols argues that Unum used a selective review of the record to justify its decision to terminate Nichols' LTD benefits. The example cited by Nichols is Unum's summary of Dr. Bernstein's correspondence.[4]

However, Nichols agrees that the limitations and/or restrictions that Unum's onset physician identified for Nichols are essentially the same as those identified by Nichols' treating physician. Since Nichols agrees that the limitations and/or restrictions used by Unum for the vocational assessment are the same as those found by her treating physician, she can hardly be heard to say that Unum is selectively reviewing the record.

---

[4]Dr. Bernstein is one of the physicians to whom Nichols was referred by Dr. Fornadel, her treating physician.

<u>Conclusion</u>

The medical restrictions and/or limitations identified by both Parties are substantially the same. Nichols was suffering from neck, shoulder and arm pain with some associated limitations in the function of her neck and upper extremity. She experienced these symptoms of pain with prolonged standing, walking and sitting. As a result of her weight and these clinical findings, Nichols should not perform activities requiring lifting greater than 10 pounds, prolonged standing, prolonged walking, prolonged sitting and should be able to change body positions as needed from sitting, standing and walking. Based upon these medical restrictions and/or limitations, the vocational consultant employed by Unum determined that Nichols could perform her job of Nurse Case Manager in the national economy.

The issues raised by Nichols are whether Unum's reliance on the opinion of its vocational consultant was arbitrary and capricious and whether Unum was required to adopt the finding by the Social Security Administration that Nichols was disabled and whether Unum was selectively reviewing the record. A key question raised by Nichols within the first issue is whether the Policy requires that Nichols be unable to perform her current job or her job as found in the national economy.

The Policy requires that Nichols be unable to perform her job in the national economy. Further, Nichols has been unable to show that Unum's reliance upon its vocational consultant was arbitrary and capricious and Unum addressed the findings of Nichols' vocational consultant. Regarding the second issue, Unum is not required to adopt the finding by the Social Security Administration that she was disabled. Finally, Nichols has not identified evidence that Unum selectively reviewed the record.

Unum clearly set forth the reasoning leading to its decision to terminate Nichols' LTD benefits. Unum's decision was rational in light of the Plan's provisions. Further, Unum has offered a reasoned explanation for its decision and its decision is based upon substantial evidence. Finally, there is no evidence that the inherent conflict of interest in any way influenced Unum's decision or that Unum otherwise acted in bad faith. Therefore, Unum's decision to terminate Nichols' LTD benefits is not arbitrary and capricious.

In a related matter, Nichols argues that this case is limited in scope because it addresses only Nichols' eligibility for disability benefits for two years, the time during which Nichols has been disabled from her own occupation. On this, Nichols is correct. She has sought judgment on the administrative record regarding Unum's decision to deny her benefits regarding eligibility for disability benefits for the time for which she has been disabled from her own occupation.

However, Nichols seeks a remand to the plan administrator to consider Nichols' entitlement to further benefits. The Policy provides that, after 24 months of payments, a claimant is disabled when Unum determines that due to the same sickness or injury, the claimant is unable to perform the duties of any gainful occupation…. (AR at UPCL00658.) However, Nichols is not entitled to 24 months of payments. Therefore, payments beyond the 24 months are not available pursuant to the Policy and there is no need to consider a remand at this time.

## COUNTERCLAIM

Unum's Counterclaim is that it paid monthly benefits to Nichols, pursuant to a reservation of rights in the total amount of $17,940 and Nichols has, therefore, been unjustly enriched by that amount. Nichols responds that Unum has offered no legal authority in support of its Counterclaim and that ERISA does not provide for the type of relief requested by Unum.

Unum argues that the Policy authorizes it to recover any overpayments including overpayments made under a reservation of rights. Unum's letter granting LTD benefits beginning on November 28, 2002, indicates that the benefits are being paid under a reservation of rights. (AR at UPCL00293-95.) However, the Policy only authorizes Unum to recover overpayments due to fraud, any error Unum makes in processing a claim and due to the claimant's receipt of deductible sources of income. (AR at UPCL00666.) The Policy does not address recovery of benefits paid under a reservation of rights.

Unum also argues that Nichols received Social Security benefits which would be a deductible source of income under the Policy. However, neither the administrative record nor the pleadings by the Parties include evidence of the amount, if any, of Social Security benefits that Nichols received and that are deductible.

The Sixth Circuit has held that an action to enforce a reimbursement provision in an ERISA plan is not cognizable under federal common law. *Qualchoice, Inc. v. Rowland*, 367 F.3d 638, 642 (6th Cir. 2004), cert. denied, 1255 S.Ct. 1639 (2005). The Sixth Circuit has also held that an action to enforce a reimbursement provision in an ERISA plan is a legal action and, therefore, not recognizable under the ERISA. *Id.* at 650. As a result, this court has no jurisdiction to adjudicate Unum's Counterclaim and it must be dismissed.

Unum finally argues that Sixth Circuit precedence rewards insurers that simply refuse to make payments until all of the evidence is collected. However, another view is that Sixth Circuit precedence encourages insurers to make timely decisions regarding benefit claims.

**SUMMARY**

Unum's decision to terminate Nichols' LTD benefits was not arbitrary and capricious. Therefore, Unum's Motion for Judgment On the Administrative Record is GRANTED and Nichols' Motion for Judgment On the Administrative Record is OVERRULED.

The Court does not have subject matter jurisdiction over Unum's Counterclaim for reimbursement. Therefore, Unum's Counterclaim is DISMISSED.

No further issues remain to be adjudicated. Therefore, the captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio, this Eighteenth day of July, 2005.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record